# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JOHN HYACINTH, | : | CRIMINAL NO. |
| Movant, | : | 1:06-CR-0172-TWT-CCH-6 |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:10-CV-3797-TWT-CCH |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | MOTION TO VACATE |
| | : | 28 U.S.C. § 2255 |

## ORDER AND FINAL REPORT AND RECOMMENDATION

Movant, John Hyacinth, has filed a motion to vacate sentence under 28 U.S.C.

§ 2255. [Doc. 756]. Presently before the Court for consideration are Movant's

§ 2255 motion to vacate [Doc. 756], the United States of America's (hereinafter

"Government's") response to the motion to vacate [Doc. 767], and Movant's traverse

[Doc. 772].[1]

_____

[1]Movant's motion for an extension of time to respond to the Government's
response [Doc. 769] is **GRANTED** *nunc pro tunc*, and his traverse is deemed
properly filed.

I.  Background

    A.  Procedural History

    On June 13, 2006, a grand jury sitting in the Northern District of Georgia returned a superseding indictment charging Movant, along with other co-defendants, with the following:  Count One, conspiracy to commit mail fraud, wire fraud, bank fraud, bank loan fraud, money laundering, and engaging in monetary transactions in property derived from specified unlawful activity, in violation of 18 U.S.C. §§ 371, 1341, 1344, 1014, 1956(a)(1)(A)(I) and (B)(I), 1957; Counts Ten, Eleven, Fifteen, and Sixteen, bank loan fraud, in violation of 18 U.S.C. § 1014; Counts Twenty-Five, Twenty-Six, Thirty-One, and Thirty-Two, mail fraud, in violation of 18 U.S.C. § 1341; Counts Forty-Six, Forty-Seven, Fifty, and Fifty-One, wire fraud, in violation of 18 U.S.C. § 1343; and Counts Sixty-Three, Sixty-Four, and Sixty-Nine, bank fraud, in violation of 18 U.S.C. § 1344.  [Doc. 164].  On October 16, 2007, Movant was found guilty on all counts following a jury trial . [Doc. 523].  On September 18, 2008, this Court sentenced Movant to a total term of 120 months of imprisonment, to be followed by a five-year term of supervised release.  [Doc. 644].

    On September 24, 2008, Movant filed a timely notice of appeal.  [Doc. 655].  On February 18, 2010, the United States Court of Appeals for the Eleventh Circuit

affirmed Movant's convictions and sentence. [Doc. 744]; *United States v. Hyacinth*, 366 F. App'x 132 (11th Cir. 2010).

On November 17, 2010, Movant filed a *pro se* motion to vacate sentence under 28 U.S.C. § 2255. [Doc. 756]. In his motion, Movant raises the following grounds for relief:

1. ineffective assistance of trial counsel based on counsel's failure to object to the following issues at trial:[2]

   a. "the District Court Abused its Discretion, committing Reversible error, by failing to make corresponding prejudice balance under Rule 403, after admitting over numerous objections, other acts, under Rule 404(b), which could have led or induced the Jury to find [Movant] guilty of the other acts, instead of the charges in the indictment . . . .";

   b. the district court committed reversible error by violating the confrontation clause when the court allowed two key witnesses to testify and present to the jury evidence of what a deceased co-defendant, Ervin Ward, purportedly told them about Movant's involvement in the offense;

   c. the district court erred by allowing the jury to be provided with the charge transcripts and the complete evidence list after they had been deliberating for over an hour, which could have exposed the jury to evidence that was not presented on record and in open court;

---

[2]Movant was represented at trial by Benjamin Davis and Adrian L. Patrick, at sentencing by Adam M. Hames, and on appeal by Paul Kish.

d.   the district court abused its discretion by allowing, over numerous objections, testimony of witnesses regarding acts outside the scope of the indictment and acts of others not charged to Movant;

e.   the district court committed reversible error by erroneously advising the jury in its instructions that the Government need only prove that Movant committed acts that were similar to the acts in the indictment and not the actual allegations and charges named in the indictment;

f.   Movant was erroneously found accountable and sentenced for two money laundering counts that were not presented to the grand jury, were not supported by evidence at trial, and were not charged in the indictment;

2.   ineffective assistance of counsel at sentencing based on counsel's:

a.   failure to make arguments regarding the loss amount attributed to Movant;

b.   failure to contest the money laundering attributed to Movant;

c.   failure to successfully convinced the Court to refrain from applying the sophisticated means enhancement;

d.   failure to make various arguments;

e.   failure to set up a lie detector test for Movant;

f.   "abandoning" Movant on appeal;

4

3.     appellate counsel was ineffective based on the following issues:

     a.     counsel failed to raise on appeal all of the above claims;

     b.     counsel failed to timely file a request for Movant to file a *pro se* brief and, "in desperation filed a motion to withdraw in the middle of the appeal process, abandoning [Movant] to his own luck;" and

     c.     counsel failed to file a petition for a writ of certiorari in the United States Supreme Court.

[Doc. 756].

B.   <u>Factual Background</u>

The following facts were established at trial through numerous witnesses and exhibits entered as evidence.

1.   <u>The Overall Scheme</u>

Larry Frazier began working with Calvin Dalton and the company Dalton owned, RETI Relocation Services, when he moved to Georgia in 1999. [Doc. 636 at 10-12]. Frazier also operated his own company called Larry Frazier Realty, which was involved in the schemes as well. [*Id.* at 12]. Frazier admitted to committing crimes using his realty company, for which he pleaded guilty and agreed to cooperate with the Government. [*Id.* at 15-18].

5

The RETI Relocation Services scheme profited from flipping properties: (1) RETI Relocation Services would purchase a property for an amount consistent with its legitimate market value; (2) members of the scheme would recruit a "straw buyer;" (3) members of the scheme would falsify a loan application for a straw buyer to obtain a very large mortgage that would exceed the original amount RETI Relocation Services paid to purchase the property; (4) RETI Relocation Services would sell the property for an inflated amount to the straw buyer based on an illegitimate property appraisal; and (5) the proceeds from the completed sale were then shared among members of the scheme including the recruiters and loan officers. [Doc. 636 at 23-47].

Frazier described the scheme as a "conspiracy" and testified that the scheme involved "a number of people working together to accomplish an objective that couldn't be accomplished without their cooperation." [Doc. 636 at 23]. Each member of the scheme "had their own role." [*Id.*]. Frazier testified that Dalton had the scheme "set up and running." [Doc. 636 at 35]. Further, Dalton's role was to oversee with Frazier what properties were in the process of being flipped and to make recommendations on what properties RETI Relocation Services would buy. [*Id.*]. Frazier's role was to serve as the real estate broker-the "center part of this"-and "to

coordinate the whole thing." [Doc. 636 at 24]. Frazier worked with the appraisers, mortgage brokers, recruiters, and attorneys. [*Id.*].

The other members of the scheme included the attorney's role in the closing and escrow, the mortgage broker, the appraiser, and the recruiter. [*Id.* at 23-24]. The recruiter's role was to find straw buyers. [Doc. 636 at 46-47]. Thus, the scheme relied heavily on the recruiters, because the scheme required "new buyers if you are going to make transactions." [*Id.* at 34-35].

### 2. Movant's Role in the Scheme

Movant was one of the recruiters in the scheme and was described as a "first-tier recruiter," who found other people to serve as sub-recruiters under him as part of the scheme. [Doc. 636 at 41, 44-45, 50]. Movant was paid by Frazier and Dalton for his involvement in the flipping scheme, including lump sum amounts of $15,000, $37,000, $40,000, and $45,000. [Doc. 636 at 49-50, 55, 57, 67-68, 74]. Frazier testified about numerous transactions conducted by the scheme which involved Movant specifically. [*Id.* at 44-74]. Frazier testified that Movant eventually started conducting his own separate scheme using his own company, HMI Relocation. [*Id.* at 71-72].

7

At least ten individuals testified that they became involved in the scheme as straw buyers through Movant, who recruited them. [Doc. 634 at 95, 171, 200-01; Doc. 635 at 26, 79, 134-35, 152, 201; Doc. 636 at 90-91; Doc. 637 at 9-11]. In these transactions, the straw buyers were mostly told that the scheme was a good investment, that their credit would be used to obtain a loan for the purchase of a house, and that the transaction would not cost them anything. [Doc. 634 at 93, 170-71, 199-201; Doc. 637 at 11-12]. Also, many of the straw buyers testified that the loan documents relating to their home purchase contained falsified information. [Doc. 634 at 103, 173-77, 205-07; Doc. 636 at 101-103].

II.   Standard of Review

Under § 2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds:  "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack."  *Hill v. United States*, 368 U.S. 424, 426-27 (1962); *see generally United States v. Hayman*, 342 U.S. 205 (1952).  "To obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."

*United States v. Frady*, 456 U.S. 152, 166 (1982). Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

This Court may deny § 2255 relief without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see Long v. United States*, 883 F.2d 966, 968 (11th Cir. 1989). Under § 2255, however, an evidentiary hearing is required when the Court cannot determine from the record that the prisoner is entitled to no relief. *United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988). As discussed below, the motion and the record of the case conclusively show that Movant is not entitled to relief or to an evidentiary hearing.

III.  Discussion

In his motion, Movant raises claims of ineffective assistance of counsel. "Ineffective assistance of counsel claims are governed by the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Green v. Nelson*, 595 F.3d 1245, 1249 (11th Cir. 2010). "An ineffective assistance claim has two components: A petitioner must show that

9

counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687). To establish deficiency, a petitioner must show that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). Additionally, to establish prejudice, a petitioner must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

A. Ineffective Assistance of Trial Counsel[3]

Movant contends that trial counsel was ineffective for failing to object to various issues at trial. According to the trial court record and Movant's own admissions, however, Movant's counsel objected to: (1) the admission of evidence

---

[3]While framed in his motion as "ineffective assistance of counsel" claims, in his traverse [Doc. 772], Movant appears to be arguing substantive error by the trial court in addition to ineffective assistance. This Court may not address his substantive error claims, because Movant failed to raise these claims on direct appeal. *See Hyacinth*, 366 F. App'x at 133-36. "As a general rule, a criminal defendant who fails to object at trial or to raise an issue on direct appeal is procedurally barred from raising the claim in a section 2255 motion absent a showing of cause for failing to preserve the claim and actual prejudice from the alleged error." *Orso v. United States*, No. 10-13609, 2012 WL 130187, at *1 (11th Cir. Jan. 17, 2012). To the extent that Movant is arguing ineffective assistance of appellate counsel as cause for failure to raise the claims on appeal, as discussed in part III. C., *infra*, such a claim is without merit and cannot serve as cause to excuse the default.

AO 72A
(Rev.8/82)

as to acts done in furtherance of the conspiracy; (2) the admission of evidence as to statements made by co-conspirators in furtherance of the conspiracy; (3) providing the jury with an exhibit list during their deliberations when the jury notified the Court's clerk that they were experiencing problems locating exhibits; and (4) witness testimony that was "saturating" and "outside the scope of the Indictment." [Doc. 756, Attach. Aff. at 13-28; Doc. 638 at 14-15; Doc. 635 at 50, 76-77]. Movant also notes in his supporting affidavit that "[d]uring the trial I was hearing so many objections that were overruled by the Judge." [Doc. 756, Attach. Aff. at 2]. Thus, trial counsel's performance was not deficient on these claims, considering that he objected at trial.

With regard to Movant's claim that trial counsel was ineffective for failing to object when the Court instructed the jury that "the government only needed to prove that the Appellant committed Acts, that were Similar, to the Acts in the Indictment and not the actual allegations and charges named in the Indictment," Movant appears to misunderstand the jury instructions given by the Court. The Court specifically instructed the jury that:

> I charge you, Ladies and Gentlemen, that the Defendant is not on trial for any act or conduct not alleged in the indictment. During the course of the trial, as you know from the instructions I gave you then, you heard evidence of acts of the Defendant which may be similar to those

charged in the indictment but which were committed on other occasions. You must not consider any of this evidence in deciding if the Defendant committed the acts charged in the indictment. However, you may consider this evidence for other very limited purposes.

If you find beyond a reasonable doubt from other evidence in this case that the Defendant did commit the acts charged in the indictment, then you may consider evidence of the similar acts allegedly committed on other occasions to determine whether the Defendant had the state of mind or intent necessary to commit the crime charged in the indictment, or whether the Defendant acted according to a plan or in preparation for commission of a crime, or whether the Defendant committed the acts for which the Defendant is on trial by accident or mistake.

[Doc. 638 at 7-8].

Movant has failed to show how these instructions were erroneous or that counsel was ineffective for failing to object to the instructions. *See United States v. Fasciana*, 226 F. Supp. 2d 445, 449 (S.D. N.Y. 2002) (holding that, in the context of a conspiracy charge, the government need not set out with precision each and every act committed in furtherance of the conspiracy, particularly where the acts proven at trial were part of the core of the overall scheme and in furtherance of that scheme; the government may offer proof of acts not included within the indictment, as long as they are within the scope of the conspiracy).

Movant also argues that he received ineffective assistance of trial counsel based on counsel's failure to object to Movant being convicted and sentenced for

12

substantive money laundering counts.  [Doc. 756, Attach. Aff. at 29].  Movant, however, was neither charged with, convicted of, nor sentenced for substantive money laundering counts.  Rather, Movant was charged with, convicted of, and sentenced as a member of a conspiracy to commit money laundering.  Thus, Movant fails to establish that trial counsel performed deficiently in failing to object at trial on this basis.

Lastly, as to all of Movant's ineffective assistance of trial counsel claims, Movant fails to establish prejudice.  The evidence at trial against Movant was overwhelming.  Numerous witnesses and documents admitted as evidence showed that Movant was involved in the scheme of property flipping by RETI Relocation Services.  Thus, Movant cannot show that, but for the alleged errors of trial counsel, the outcome of his trial would have been different.  Accordingly, Movant's ineffective assistance of trial counsel claims are without merit.

In his reply to the Government's response, Movant adds a claim that trial counsel was ineffective for failing to advise Movant of his right to enter a guilty plea. [Doc. 772 at 2].  He then alleges that the Government failed to address this issue in its response to the motion to vacate.  Since Movant had not raised this issue until he filed his reply ("traverse") to the Government's response to his motion, the

Government cannot fairly be criticized for not responding to a claim not made. In any event, even assuming that this claim had been timely made, Movant has failed to show prejudice as a result of this claim because he has not alleged that he wanted to plead guilty or that he would have pled guilty had trial counsel advised him of his rights.[4] Furthermore, based on the record at the pre-trial conference, it appears that Movant's counsel and the Government discussed the possibility of a plea, because the Government stated, "We have had some discussions with counsel about a possible resolution. Apparently, there is not going to be one; so we are prepared to proceed." [Doc. 726 at 2]. Thus, Movant's claim should be dismissed.

B. <u>Ineffective Assistance of Counsel At Sentencing</u>

Movant argues that counsel at sentencing was ineffective for failing to make various arguments during the sentencing hearing, failing to "set up a lie detector test for sentencing," and "abandoning" Movant on appeal. [Doc. 756 at 3-4].

---

[4]Indeed, Movant was the only co-defendant to proceed to trial. [Doc. 500]. The undersigned also notes that, at the pre-trial conference, Movant refused to stipulate to the authenticity of the business records to be introduced at trial, which lengthened the trial and caused the Government and the Court greater expense in trying the case. [Doc. 726 at 3]. Thus, it does not appear that Movant wanted to enter a guilty plea.

14

Specifically, Movant contends that sentencing counsel should have (1) made arguments regarding the loss amount attributed to Movant, (2) contested the money laundering attributed to Movant, and (3) successfully convinced the Court to refrain from applying the sophisticated means enhancement. [Doc. 756, Attach. Aff. at 29].

The loss amount was established by a revised loss chart that the Government submitted in advance to the Court and Movant's counsel. [Doc. 696 at 18-19]. The record shows that the loss amount was not "fabricated" as Movant contends. Thus, Movant has failed to establish how counsel's performance was deficient at sentencing for failing to object to the loss amount.

With regard to the money laundering attributed to Movant, the Court explained that Movant was convicted of conspiracy to commit money laundering and that his offense level was appropriately enhanced for the laundered funds exceeding $200,000 but less than $350,000. [Doc. 696 at 14-15]. Movant has failed to show how counsel performed deficiently in failing to object to the money laundering attributed to Movant.

Movant's counsel at sentencing argued against the application of the sophisticated means enhancement and made a clear record of Movant's objection. [Doc. 696 at 3-7]. The fact that counsel's argument was unsuccessful fails to show

15

that he was ineffective.  *See Lopez v. United States*, Nos. 8:04-cr-336-T-17MSS, 8:07-cv-2293-T-17MSS, 2008 WL 3889586, at *4 (M.D. Fla. Aug. 18, 2008) (holding counsel cannot be deemed ineffective merely because he raised unsuccessful arguments).  Movant does not indicate how counsel's actions at sentencing were deficient on this claim.  Thus, his claim is without merit.

Movant also argues that sentencing counsel was ineffective for failing to set up a lie detector test at sentencing to determine how much Movant knew and did not know about the conspiracy.  It is unclear how this would have benefitted Movant considering he had already been convicted of the conspiracy.  Furthermore, because Movant was convicted of conspiracy, Movant was not required to know every detail of the conspiracy in order to be held accountable at sentencing for the acts conducted in furtherance of the conspiracy.  *See United States v. Rodriguez*, 427 F. App'x 784, 792 (11th Cir. 2011) (holding that a defendant need not be "privy to all the details of the conspiracy or be aware of all the other conspirators" to be convicted of conspiracy (citation omitted)).  Therefore, Movant's sentencing counsel was not ineffective for failing to set up a lie detector test at sentencing.

Lastly, Movant's claim that sentencing counsel "abandoned" him on appeal due to an apparent conflict regarding attorney's fees is without merit.  Movant was

AO 72A
(Rev.8/82)

provided with court-appointed appellate counsel. Accordingly, Movant has not shown prejudice, and his claim should be denied.

C. <u>Ineffective Assistance of Appellate Counsel</u>

Movant argues that appellate counsel was ineffective for failing to raise on appeal the arguments contained in the instant motion, failing to file a motion for the court of appeals to allow Movant to proceed *pro se*, and failing to file for a writ of certiorari to the Supreme Court of the United States. [Doc. 756 at 5B, Attach. Aff. at 5].

Movant has failed to show how appellate counsel performed deficiently. The correspondence between Movant and appellate counsel shows that counsel considered the legal and procedural issues in Movant's case and obtained an extension to the briefing schedule to allow for more time to examine the issues. [Doc. 756, Attach. Aff. at 44-45, 54]. On April 20, 2009, appellate counsel informed Movant that the appellate brief was filed and explained to Movant why counsel chose a legal strategy to focus on a more narrow set of substantial issues. [*Id.*, Attach. Aff. at 54]. Furthermore, Movant has not shown how he was prejudiced by appellate counsel's failure to raise the additional arguments on appeal.

AO 72A
(Rev.8/82)

With regard to Movant's claim that appellate counsel failed to file a motion in the court of appeals to allow Movant to proceed *pro se*, appellate counsel wrote to Movant on May 7, 2009, explaining that the court of appeals refused to receive Movant's *pro se* motion because he was already represented by appellate counsel. According to Movant's attached correspondence, he asked appellate counsel to move for leave to withdraw after the filing deadline, and appellate counsel complied with Movant's request. Thus, it does not appear that appellate counsel was unresponsive to Movant's desire to represent himself on appeal once he learned of Movant's wish to do so.

With regard to appellate counsel's failure to file for a writ of certiorari to the Supreme Court, Movant has failed to show how appellate counsel performed deficiently by failing to seek certiorari for him. Indeed, Movant had asked that appellate counsel no longer represent him. Therefore, appellate counsel had no obligation to seek certiorari. Furthermore, Movant has not shown how he was prejudiced by the alleged failure to seek certiorari. Thus, Movant's ineffective assistance of appellate counsel claims should be dismissed.

AO 72A
(Rev.8/82)

IV.  Movant's Motions

Movant has filed a motion for judgment on the pleadings [Doc. 770], arguing that he is entitled to have his § 2255 motion granted because the Government failed to specifically respond to one of the grounds raised in the motion.  The undersigned has found that the Government adequately responded to the grounds raised in the motion.  *See* Discussion, *infra*, at p. 10-14.  Furthermore, any failure to address a ground by the Government does not entitle Movant to relief.  *See Aziz v. Leferve*, 830 F.2d 184, 187 (11th Cir. 1987) ("[A] default judgment is not contemplated in habeas corpus cases . . . .").  Accordingly, the undersigned recommends that the motion be **DENIED**.

Movant has filed a motion to strike the Court's order granting an extension of time to the Government to respond to the § 2255 motion.  [Doc. 771].  The undersigned finds that the extension was properly granted, and Movant's motion is, therefore, without merit.  Thus, the motion is **DENIED**.

Movant has filed two motions [Docs. 779 and 780] objecting to the order [Doc. 776] transferring this case to the undersigned magistrate judge.  Title 28 U.S.C. § 636(b)(1)(B) authorizes district judges to refer to magistrate judges, *inter alia*, "applications for posttrial relief made by individuals convicted of criminal offenses."

AO 72A
(Rev.8/82)

The district court does not need to obtain the consent of the parties before assigning these matters to a magistrate judge. *See* 28 U.S.C. § 636(b)(1)(B)-(C); *Reeves v. DSI Sec. Services, Inc.*, 395 F. App'x 544, 548 (11th Cir. 2010). Accordingly, Movant's motions [Docs. 779 and 780] are without merit and are **DENIED**.

Movant has also filed a motion requesting to be informed of any entries on the docket. [Doc. 781]. It is Movant's responsibility to stay apprised of the latest developments on the docket in his case. Moreover, the Clerk will send Movant a copy of anything that is filed in the case. Thus, Movant's motion is **DENIED**.

V. <u>Certificate of Appealability</u>

According to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A prisoner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473,

AO 72A
(Rev.8/82)

484 (2000).

Movant has failed to make a substantial showing of the denial of a constitutional right. Movant's grounds for relief are without merit. Accordingly, **IT IS RECOMMENDED** that a certificate of appealability be **DENIED**.

## VI. <u>Conclusion</u>

Based on the foregoing, **IT IS RECOMMENDED** that Movant John Hyacinth's motion to vacate sentence [Doc. 756] be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Movant's motion for judgment on the pleadings [Doc. 770] be **DENIED**.

**IT IS ORDERED** that Movant's motion to strike the Court's order granting an extension of time to the Government to respond to the § 2255 motion [Doc. 771], two motions objecting to the order transferring this case to the undersigned magistrate judge [Docs. 779 and 780], and motion requesting to be informed of any entries on the docket [Doc. 781] be **DENIED**.

AO 72A
(Rev.8/82)

The Clerk is **DIRECTED** to terminate the referral to the undersigned magistrate judge.

      **IT IS SO ORDERED AND RECOMMENDED** this 2nd day of March, 2012.

_____
C. CHRISTOPHER HAGY
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)